UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ANTHONY ROBBINS,

        Plaintiff,

Case No. 1:10-cv-1241

Hon. Robert J. Jonker

v.

RICH HALLWORTH, *et al.*,

        Defendants.

                                /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Julie Fletcher, Todd Lambart and Douglas Graham (docket no. 18).

**I.**      **Background**

Plaintiff filed a complaint naming 28 defendants and 100 unknown defendants. Compl. (docket no. 1). On initial screening pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321(1996), the court dismissed all defendants except for registered nurses Julie Fletcher, Douglas Graham, Todd Lambart, and R. Neyo. *See* Opinion and Order (docket nos. 9 and 10). Pending before the court are plaintiff's allegations that these four defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. The court's opinion screening the complaint summarized plaintiff's allegations as follows:

> Plaintiff claims that he suffers from chronic neck and back pain, migraine headaches and diabetes. He makes broad allegations against Defendants for failing to provide him with proper medical care for his conditions in violation of the Eighth Amendment and the Fourteenth Amendment Due Process Clause. However, the only specific allegations contained in the complaint concern his transfer from the Newberry Correctional Facility to the Richard A. Handlon Correctional Facility on

>April 28, 2010. Plaintiff claims that while he was being evaluated by Defendants Fletcher and Graham following his arrival at Handlon, he requested pain medication for "his major migra[i]ne headache and pain and discomfort from being without his diabetic insulin while in transit to the prison." (Compl, ¶ 12, Page ID#10.) Defendants Fletcher and Graham instructed him to send a medical kite in order to be seen by nursing staff. Plaintiff sent kites on April 28 and May 1. On May 3, Plaintiff received a written response from Defendant Neyo saying only "watch callout." Plaintiff claims that he was not seen by nursing staff for eight days. Plaintiff claims that he suffered terrible pain and discomfort during that period and was without pain medication or insulin. Plaintiff sent an additional medical kite on May 10, 2010, requesting to see a neurologist about his chronic migraine, back and shoulder pain. Defendant Lambart responded "You are scheduled to see the nurse about these matters, an appropriate referral will be made if necessary at that time." (Compl.,16, Page ID#11.) Plaintiff claims that no such neurological evaluation has occurred and he continues to suffer unnecessary pain due to the deliberate indifference of all of the named Defendants.
>
>Plaintiff also generally asserts that the Defendant medical staff members are denying him medical care in retaliation for his grievances concerning inadequate medical care. The only specific allegations he makes with regard to retaliation are that Defendants Pelon and Schad, as supervisory personnel, "fail[ed] to abate the retaliatory acts of commissions [sic] of their subordinate staff," thus placing Plaintiff at risk of irreparable harm. (Compl, ¶ 25, Page ID#13.)
>
>Plaintiff seeks injunctive relief and monetary damages of $900,000.

Opinion at pp. 2-3.

### III. Defendants motion for summary judgment

### A. Legal Standard

Defendants Fletcher, Graham and Lambart have moved for summary judgment.[1] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] The court notes that defendant Neyo has not yet been served in this action. *See* Unexecuted waiver of service (docket no. 26).

2

Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after

the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Richard D. Russell, Manager of the MDOC's Grievance Section, has submitted an affidavit stating that he searched the records for Step III grievance appeals filed by plaintiff for the time period relevant to his complaint. Richard D. Russell Affidavit at ¶¶ 1, 17-18 (docket no. 19-3). Russell identified three grievances which met this criteria: NCF-2010-06-636-28b; MTU-2010-07-670-12z; and MTU-2010-11-1188-12d. *Id.* at ¶ 18. However, none of these grievances named defendants Fletcher, Lambart or Graham. *Id.* Based on this record, defendants have presented evidence to establish that plaintiff failed to properly exhaust his claims against them.

In his response, plaintiff points to the verified complaint, in which plaintiff alleged:

> Plaintiff has exhausted all available remedies as were available to him under Grievance Identifier Number: MTU-101-101-188-012d. His grievance was denied at both lower steps and denied at the third step appeal by R. P. Russell [sic] on December 2, 2010.

Compl. at ¶ 20. On its face, plaintiff's statement indicates that he exhausted a grievance through Step III, other than those identified in Russell's affidavit. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). However, plaintiff's statement does not rebut Russell's affidavit.

As an initial matter, the grievance listed in the complaint, "MTU-101-101-188-012d," does not bear the same identifier as any of the other MDOC grievances found, although it may be grievance MTU-2010-11-1188-12d. Even if the court assumes this is the case, and that plaintiff exhausted the grievance to Step III, plaintiff does not escape summary judgment.

Here, the relevant factual dispute is whether plaintiff properly exhausted a grievance against defendants Fletcher, Lambart and Graham with respect to the Eighth Amendment claims alleged in the complaint, by naming them in a grievance. Plaintiff has not presented evidence that this grievance (or any other grievance) named defendants Fletcher, Lambart and Graham,[2] and Russell's affidavit states that it does not.

Viewing the evidence in the light most favorable to plaintiff, there is no evidence before the court that he properly exhausted his Eighth Amendment claims against defendants Fletcher, Lambart or Graham. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment on grounds of lack of exhaustion.[3]

---

[2] The court notes that defendants did not file copies of the grievances cited in Russell's affidavit. Similarly, while plaintiff filed approximately 226 pages of "exhibits" to his complaint, he did not submit a copy of the grievance upon which he relies, i.e., MTU-101-101-188-012d. *See* Exhibits (docket nos. 11, 12, 13 and14). Nevertheless, the court can resolve this motion based upon the sworn statements of record.

[3] Defendants also seek summary judgment on grounds of qualified immunity. Because plaintiff failed to properly exhaust his administrative remedies, and has failed to meet the precondition for filing this action under 42 U.S.C. § 1997e(a), it is unnecessary to perform any further review of his complaint.

**IV.	Recommendation**

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Fletcher, Lambart and Graham (docket no. 18) should be **GRANTED** for failure to exhaust administrative remedies and that they be dismissed from this action.

Dated:  November 14, 2011	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

Nevertheless, the court notes that defendants' claim for qualified immunity is not well-taken.  Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendants argue that "[q]ualified immunity is warranted in this matter" because "[p]laintiff cannot prove the violation of a constitutional right since he failed to exhaust his administrative remedies."  Defendants' Brief at p. 8 (docket no. 19).  Defendants' argument is inapposite.  Whether a prisoner plaintiff complied with the exhaustion requirement under the PLRA is unrelated to the separate issue of whether a defendant government official is entitled to qualified immunity under the facts alleged in the complaint.